**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**Civil Action No. 1:25-cv-_____**

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**

Plaintiff,

v.

**VINOCIBO LLC D/B/A SCALO RESTAURANT,**

Defendant.

**(JURY TRIAL DEMAND)**

---

**COMPLAINT**

---

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Civil Rights Act of 1991 ("Title I") to correct unlawful employment practices on the basis of sex, female, and retaliation, and to provide appropriate relief to Charging Party, Brittany Rotzoll, and a class of female aggrieved individuals who were adversely affected by such practices during their employment with VinoCibo LLC d/b/a Scalo Restaurant ("Scalo" or "Defendant"). The Equal Employment Opportunity Commission ("EEOC") seeks relief for Rotzoll and a class of other female aggrieved individuals who were sexually harassed by male managers and supervisors at Scalo, including but not limited to: unwelcome verbal and physical sexual harassment and a male manager who requested sex in exchange for more hours on the schedule. This conduct created a hostile work environment because of Rotzoll's and the other female aggrieved individuals' sex. Further, Scalo retaliated against Rotzoll and other aggrieved individuals for engaging in protected activity and opposing and/or reporting sexual harassment or

1

retaliation. Scalo also failed to post notices about employee rights and failed to preserve records related to Rotzoll's complaint of sexual harassment.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) and pursuant to Section 102 of Title I, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the District of New Mexico and venue properly lies in the District of New Mexico.

## PARTIES

3.      Plaintiff, the EEOC, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4.      At all relevant times, Scalo, a limited liability company, has continuously been doing business in the State of New Mexico.

5.      At all times relevant, Scalo has continuously had at least 15 employees.

6.      At all relevant times, Scalo has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

7.      At all relevant times, Scalo employed Charging Party Brittany Rotzoll and other aggrieved individuals adversely affected by alleged unlawful employment practices.

## ADMINISTRATIVE PROCEDURES

8.    More than thirty days prior to the institution of this lawsuit, Rotzoll filed a charge with the EEOC alleging violations of Title VII by Scalo.

9.    Rotzoll filed charge of discrimination number 543-2024-00303 with the EEOC on December 22, 2023.

10.    The EEOC provided Scalo with notice of the charge of discrimination on December 31, 2023.

11.    The EEOC investigated the charge of discrimination.

12.    On December 16, 2024, the EEOC sent Scalo a Letter of Determination regarding the charge of discrimination.

13.    In the Letter of Determination, the EEOC found reasonable cause to believe Scalo violated Title VII.

14.    In the Letter of Determination, the EEOC invited Scalo to join with the EEOC in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

15.    The EEOC and Scalo were unable to reach an agreement through the conciliation process.

16.    On January 15, 2025, the EEOC issued to Scalo a Notice of Failure of Conciliation advising Scalo that the EEOC was unable to secure from Scalo a conciliation agreement acceptable to the EEOC.

17.    All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

### A.  Defendant Scalo

18.    Scalo is a fine dining restaurant in Albuquerque, New Mexico.

19.     Scalo employs staff in front-of-house positions and kitchen positions.

20.     Since 2020, Scalo has been owned by Kristie and Prashant Sawant.

21.     During the EEOC's investigation, multiple Scalo current and former managers provided sworn testimony to EEOC investigators, which testimony is referenced herein.

22.     Owner Kristie Sawant owns fifty-one percent of Scalo.

23.     During all times relevant, owner Kristie Sawant did not work at Scalo.

24.     Owner Kristie Sawant has little to no knowledge about how Scalo functions.

25.     During all times relevant, owner Kristie Sawant was rarely or never present at Scalo.

26.     During all times relevant, owner Kristie Sawant never met or interacted with most Scalo employees.

27.     Owner Prashant Sawant, while more involved with the administration of the business, was also rarely present at Scalo during the relevant time period.

28.     During all times relevant, owner Prashant Sawant delegated most duties to the General Manager.

29.     During all times relevant, Scalo employed three managers: General Manager Boris Revilla, Executive Chef David Ruiz, and Assistant Manager Pascal Mailhebiau.

30.     Scalo hired General Manager Revilla in early 2022.

31.     As General Manager ("GM"), Revilla supervised all front-of-house staff.

32.     From the time he was hired by Scalo, GM Revilla had the authority to hire, fire, and discipline all Scalo employees.

33.     From the time he was hired by Scalo, GM Revilla controlled all day-to-day operations of Scalo.

34. GM Revilla controlled the scheduling of all front-of-house employees.

35. GM Revilla was the highest-ranking manager at Scalo.

36. GM Revilla reported to Scalo's owners.

37. Scalo employees communicated with GM Revilla about all day-to-day matters.

38. According to Scalo owner Prashant Sawant, GM Revilla was Scalo's "top boss."

39. Since early 2022, Scalo also employed David Ruiz as Executive Chef.

40. During all times relevant, Executive Chef Ruiz was a high-ranking manager.

41. During all times relevant, Executive Chef Ruiz supervised all kitchen employees.

42. During all times relevant, Executive Chef Ruiz had the authority to hire, fire, and discipline staff.

43. Ruiz reported to GM Revilla and Scalo's owners.

44. Scalo also employed Assistant Manager Pascal Mailhebiau since early 2022.

45. Assistant Manager Mailhebiau reported to GM Revilla.

46. During all times relevant, Assistant Manager Mailhebiau was responsible for hiring, firing, discipline, co-supervision, and onboarding of front-of-house staff.

### B. Scalo's Harassment Policies

47. None of Scalo's managers or owners are trained on how to handle a discrimination or harassment complaint.

48. None of Scalo's managers or owners are trained on discrimination or harassment laws.

49. In fact, Scalo does not train any of its employees on harassment and discrimination laws.

50.    Scalo does not train any employee on its own anti-discrimination polices or its procedures for reporting alleged discrimination.

51.    Scalo's employee manual, which contains information about how to report complaints of discrimination and harassment, is not consistently distributed to employees.

52.    Scalo does not keep records of which employees received the Scalo employee manual.

53.    Scalo does not keep records of which employees signed the receipt acknowledgement at the end of the Scalo employee manual.

54.    Most Scalo managers told the EEOC they did not receive an employee manual upon hire and were not familiar with the contents of the manual.

55.    Most Scalo employees told the EEOC they never received an employee manual, never received training on discrimination or harassment, and did not know how to report complaints of discrimination and harassment.

### C.  Scalo's Attendance and Tardiness Policies

56.    Scalo's employee manual also contains information about Scalo's attendance policy.

57.    However, tardiness is not defined in Scalo's employee manual or in Scalo's attendance policy.

58.    Scalo's attendance policy does not define how many tardy arrivals will result in discipline.

59.    Scalo's attendance policy does not define how many minutes after the start of a shift is considered tardy.

60.     As such, what was considered tardiness warranting discipline varied from one manager to another.

61.     According to Scalo owner Prashant Sawant, tardiness depended on the shift and the manager, and maybe fifteen minutes late was considered tardy.

62.     According to General Manager Revilla, five minutes after the shift was tardy.

63.     According to Assistant Manager Mailhebiau, tardiness depended on the shift and perhaps five minutes late was tardy.

64.     According to Chef Ruiz, more than fifteen minutes after the shift might be tardy, but normally Scalo was lenient and did not punish tardiness.

65.     According to non-supervisory Scalo employees any tardiness expectation was rarely, if ever enforced.

66.     Some Scalo employees regularly arrived late for their shifts and were not disciplined or terminated.

### D. Charging Party Brittany Rotzoll's Employment with Scalo

67.     Scalo hired Rotzoll as a cocktail server on or about October 22, 2022.

68.     Cocktail server is a front-of-house position at Scalo.

69.     General Manager Revilla hired Rotzoll.

70.     At all times relevant, GM Revilla was Rotzoll's supervisor.

71.     At all times relevant, GM Revilla was the manager who scheduled Rotzoll for shifts at Scalo.

72.     Scalo managers considered Rotzoll to be good at her job and a good worker.

### E. Sexual harassment of Charging Party Brittany Rotzoll

73.    Throughout Rotzoll's employment, General Manager Revilla subjected her to unwanted touching, sexual comments, and requests to go out with him.

74.    GM Revilla's sexually inappropriate conduct began during Rotzoll's hiring interview, when GM Revilla told Rotzoll she should wear a skirt to work rather than Scalo's regular uniform of slacks and a dress shirt.

75.    After Rotzoll was hired, GM Revilla's sexually inappropriate conduct increased.

76.    Every shift, General Manager Revilla inappropriately touched Rotzoll.

77.    For example, when Rotzoll was working at Scalo, GM Revilla often grabbed Rotzoll by the waist and pulled her towards him.

78.    During and after work, GM Revilla repeatedly asked Rotzoll out, even though she rejected all such requests.

79.    GM Revilla's date requests were usually made in person and sometimes made via text message and/or social media.

80.    Sometimes after work, often at late hours, GM Revilla messaged Rotzoll asking her to meet up.

81.    Throughout Rotzoll's employment, GM Revilla messaged Rotzoll numerous other sexually charged comments in addition to requests for dates or meet ups.

82.    For example, on one occasion GM Revilla offered to get a hotel room for him and Rotzoll.

83.    One another occasion, GM Revilla messaged Rotzoll asking for pictures of her night out with friends.

84.    Yet another example, at 11:32 p.m., GM Revilla messaged Rotzoll, "Drinks tomorrow night?"

85.    GM Revilla made these sexual comments or requests usually in person, but sometimes by text or social media, to Rotzoll at least three to four times a month.

86.    Each time GM Revilla asked Rotzoll out, Rotzoll rejected him.

87.    Rotzoll found the work environment at Scalo to be hostile due to GM Revilla's offensive sexually charged conduct, comments, and requests, which made Rotzoll very uncomfortable.

88.    A reasonable female employee would perceive the work environment at Scalo to be hostile due to GM Revilla's offensive sexually charged conduct, comments, and requests.

**F. Retaliation and Quid Pro Quo Request**

89.    During the first months of Rotzoll's employment, from October through December 2022, Rotzoll was scheduled for and worked several shifts a week at Scalo.

90.    After about two months of Rotzoll rejecting GM Revilla's overtures, he dramatically decreased Rotzoll's shifts at Scalo.

91.    Beginning in 2023, GM Revilla assigned Rotzoll zero shifts for January.

92.    GM Revilla assigned Rotzoll only one shift in February 2023.

93.    GM Revilla assigned Rotzoll only two shifts in March 2023.

94.    GM Revilla assigned Rotzoll very few shifts despite Rotzoll's request for work.

95.    On or about February 25, 2023, after two months of almost no work, Rotzoll messaged GM Revilla, "I thought you were going to schedule me more days."

96.    GM Revilla responded, "I thought you were going to fuck me daily lmao."

97.    Rotzoll was upset by GM Revilla's failure to schedule her for shifts and Revilla's implication that he was not scheduling her for more hours because she would not have sex with him.

9

98.     Rotzoll did not know how to report GM Revilla's inappropriate conduct because he was the highest ranking manager at the restaurant and Rotzoll never received an employee manual with information about who to contact.

99.     Furthermore, Rotzoll was intimidated by the fact that GM Revilla was her manager and she was afraid of losing her job.

### G. Rotzoll's Termination

100.    On February 19, 2023, Rotzoll allegedly showed up late to her shift.

101.    On February 19, 2023, Manager Mailhebiau gave Rotzoll a written warning stating that she had previously been late several times, and that future tardiness would result in termination.

102.    On March 19, 2023, Rotzoll was scheduled to start at 10:00 a.m.

103.    According to Scalo's time records, Rotzoll clocked in early at 9:52 a.m. on March 19, 2023, and worked her entire scheduled shift.

104.    Nevertheless, Assistant Manager Mailhebiau fired Rotzoll on March 19, 2023, for allegedly showing up late.

105.    The decision to discharge Rotzoll on March 19, 2023, was made jointly by GM Revilla and Assistant Manager Mailhebiau.

### H. Other aggrieved individuals

106.    Female employees other than Rotzoll were also subjected to a sexually hostile work environment by managerial officials and supervisors at Scalo.

107.    The sexually hostile work environment at Scalo included in particular the almost daily sexual conduct and comments made by Scalo managers and/or supervisors.

108.    For example, General Manager Revilla subjected female employees to unwelcome physical touching such as touching female employees' shoulders, grabbing them around the waist, touching their lower back, and giving long hugs.

109.    General Manager Revilla subjected female employees to unwelcome sexual commentary, aggressive flirtatious behavior, and requests to go out with him.

110.    Similarly, since 2022, Executive Chef David Ruiz subjected female employees to unwelcome touching, unwelcome flirtatious behavior, and sexual comments.

111.    GM Revilla and Chef Ruiz often engaged in harassing behavior together when they both worked the same shift.

112.    During most shifts, GM Revilla and Chef Ruiz made vulgar, sexually charged comments about the clothing, bodies, and physical appearances of female employees and female customers.

113.    During most shifts, GM Revilla and Chef Ruiz loudly discussed women they found physically attractive and speculated on who female employees were dating.

114.    During most shifts, GM Revilla and Chef Ruiz talked about their own sexual activities in front of subordinate employees and customers.

115.    Often daily, GM Revilla and Chef Ruiz called female employees "honey" or "babe".

116.    Despite being asked to stop calling female workers "chola" and/or "chonga", sex-based racial terms that connote negative stereotypes of Latina women, in a denigrating way, Chef Ruiz persisted in calling female employees these offensive names.

117.    GM Revilla and Chef Ruiz did not call male employees "honey", "babe", "chola", "chonga", or any similar kinds of names.

118.    During many weekend shifts, Ruiz spoke with customers he knew and had loud, offensive conversations about sex and women in front of employees and other customers.

119.    A reasonable female employee would find the work environment at Scalo to be hostile or abusive due to the sexual conduct and comments by GM Revilla and Chef Ruiz.

120.    Rotzoll and other female employees did find the work environment at Scalo to be hostile or abusive due to GM Revilla and Chef Ruiz's sexual conduct and comments described above.

### I.    Scalo's Failure to Prevent or Correct Sexual Harassment and Retaliation

121.    Some female employees felt so uncomfortable by the constant harassment and Scalo's inaction that they felt they had no other option but to resign.

122.    Some female employees complained to Scalo management about or otherwise opposed sexual harassment and/or retaliation by managerial officials and supervisors.

123.    Despite complaints from female employees about sexual harassment and retaliation, Scalo failed to take adequate steps to correct or prevent sexual harassment and retaliation.

124.    For example, on or about November 2023, a female employee complained to Scalo owner Prashant Sawant about Scalo managers' derogatory comments, harassment, and jokes.

125.    The female employee told owner Sawant that comments from managers were inappropriate and made her feel uncomfortable.

126.    Scalo owner Sawant told the aggrieved individual he would investigate her complaint.

127.    However, Scalo owner Sawant did not investigate the employee's complaint.

128.    Scalo owner Sawant did not monitor the workplace.

129.    Scalo owner Sawant did not discipline any manager for discriminatory or harassing conduct.

130.    Scalo owner Sawant did not take adequate action to address the complaint.

131.    Assistant Manager Mailhebiau knew about Executive Chef Ruiz sexually harassing female employees by making inappropriate comments, but Mailhebiau took no action to prevent or correct Chef Ruiz's sexual harassment of female employees.

132.    GM Revilla knew about Chef Ruiz sexually harassing female employees but failed to take action to prevent or correct Chef Ruiz's sexual harassment of female employees.

133.    Chef Ruiz knew about GM Revilla sexually harassing female employees but failed to take action to prevent or correct GM Revilla's sexual harassment of female employees.

134.    Scalo also retaliated against employees who complained about harassment or retaliation.

135.    Scalo's retaliation included subjecting employees to adverse terms and conditions of employment and retaliatory discharge.

136.    For instance, on or about November 2023, when a female employee opposed Chef Ruiz's sexual harassment, Chef Ruiz retaliated by discharging her less than 10 days later.

**J.  Posting and Record Keeping Violations**

137.    On or about January 2024, Scalo investigated GM Revilla's conduct after it received notice of Rotzoll's EEOC charge.

138.    Scalo owners Kristie and Prashant Sawant interviewed multiple employees about their knowledge of Rotzoll's allegations.

139.     Owner Kristie Sawant made notes about her interviews with three employees but discarded the notes.

140.     Also, Scalo does not retain employee records like resumes, interview notes, applications, termination paperwork, and performance reviews, with the exception of OSHA violations or disciplinary records.

141.     During all times relevant, Scalo used the software applications, Toast and 7Shifts, to schedule, issue communications to, and directly message employees.

142.     Scalo did not consistently maintain copies of records generated via Toast and 7Shifts.

143.     Assistant Manager Mailhebiau issued Rotzoll a termination notice via 7Shifts.

144.     Scalo did not preserve Rotzoll's termination notice or paperwork.

145.     Scalo did not preserve other records generated through Toast or 7Shifts and relevant to Rotzoll's allegations, including all messages sent to or received by Rotzoll and GM Revilla.

146.     EEOC investigators conducted interviews at Scalo on or about August 21, 2024.

147.     While at Scalo, EEOC investigators observed that Scalo did not have any EEOC notices or posters on the walls, or any posters describing federal anti-discrimination laws, Title VII, and information about filing of a charge or complaint.

## CLAIMS FOR RELIEF

148.     Since at least January 1, 2022, Scalo has engaged in unlawful employment practices at its Albuquerque, New Mexico restaurant in violation of Sections 703(a) and 704(a) of Title VII, 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a).

## FIRST CLAIM FOR RELIEF
### Harassment/Hostile Work Environment Based on Sex; 42 U.S.C. § 2000e-2(a)

149.    The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

150.    Since at least January 2022, Scalo discriminated against Rotzoll and other aggrieved female employees in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by subjecting them to a hostile work environment based on sex.

151.    The offensive sexual conduct described in the preceding paragraphs was unwelcome to Rotzoll and other aggrieved female employees.

152.    Scalo subjected Rotzoll and other aggrieved female employees to sexual harassment that was sufficiently severe or pervasive to alter the terms and conditions of their employment.

153.    Scalo is liable for having created and/or tolerated a work environment that was hostile for female employees, based on their sex.

154.    General Manager Revilla was Scalo's highest-ranking manager with control over all day-to-day operations of the business and supervisory authority over all of Scalo's employees.

155.    As the highest-ranking manager with control over all day-to-day operations of the business, GM Revilla was the alter ego or proxy of Scalo.

156.    Scalo is directly liable for the unlawful sexually harassing conduct of its alter ego or proxy, GM Revilla.

157.    Executive Chef Ruiz had authority over all kitchen staff, including authority to take tangible employment actions, such as discharge.

158.    Both GM Revilla and Chef Ruiz subjected female employees to an unlawful hostile work environment based on sex.

159.    Scalo is vicariously liable for the hostile work environment based on sex due to the inappropriate and sexually harassing conduct of Scalo managers, including GM Revilla and Chef Ruiz.

160.    Scalo is liable based on negligence for its failure to act reasonably to prevent or promptly correct the sexually hostile work environment that existed at Scalo.

161.    The sexual harassment of Rotzoll and other female aggrieved employees was open, notorious, and widely known among managers and supervisors at Scalo.

162.    GM Revilla knew about Chef Ruiz's sexual harassment of female employees, but GM Revilla failed take appropriate action to prevent or promptly correct Ruiz's inappropriate workplace conduct.

163.    Executive Chef Ruiz knew about GM Revilla's sexual harassment of female employees, but Chef Ruiz failed take appropriate action to prevent or promptly correct Revilla's inappropriate workplace conduct.

164.    Assistant Manager Mailhebiau knew about Chef Ruiz's sexual harassment of female employees, but Assistant Manager Mailhebiau failed to take appropriate action to prevent or promptly correct Ruiz's inappropriate workplace conduct.

165.    Some female employees reported the harassment to Scalo's owners.

166.    Scalo knew or should have known about the sexual harassment suffered by Rotzoll and other aggrieved female employees because of the reports it received, the open and notorious nature of the harassment, the pervasiveness of the harassment, and the knowledge of its own managers of the inappropriate conduct.

167.    Scalo did not consistently distribute to employees its sexual harassment policies, resulting in many employees being unaware of how or to whom to complain.

168. Nonetheless, some aggrieved individuals did complain of harassment to Scalo.

169. Despite receiving complaints and having knowledge of the harassment, Scalo failed to take adequate actions to stop, prevent, or remedy the work environment hostile for female employees, based on their sex.

170. The effect of the practices complained of above has been to deprive Rotzoll and other aggrieved female employees of equal employment opportunities and otherwise affect their status as employees because of their sex, female.

171. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

172. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Rotzoll and other aggrieved female employees.

173. As a result of the events and actions described above, Rotzoll and a class of aggrieved female employees were deprived of equal employment opportunities, lost wages and benefits, suffered emotional distress and were otherwise adversely affected because of their sex.

## SECOND CLAIM FOR RELIEF
### Disparate Treatment Based on Sex; 42 U.S.C. § 2000e-2(a), § 2000e-3(a).

174. The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

175. Scalo discriminated against Rotzoll and other aggrieved female employees by discharging or constructively discharging them because of their sex (female) in violation of Title VII, 42 U.S.C. § 2000e-2(a), § 2000e-3(a).

176.    Rotzoll and other aggrieved female employees at Scalo were discriminatorily discharged because of their sex or constructively discharged because the sexually hostile work environment was so intolerable they were forced to resign.

177.    Rotzoll was qualified for her job and performed her work well.

178.    On March 19, 2023, Scalo discharged Rotzoll allegedly for being tardy to work that day, after having been warned about tardiness.

179.    Rotzoll clocked in early on March 19, 2023, and was not tardy.

180.    Scalo does not have any consistently enforced attendance or tardiness policy.

181.    To the contrary, Scalo tolerates a high rate of employee tardiness.

182.    Employees arriving late to work at Scalo are rarely, if ever, disciplined or discharged for this alleged infraction.

183.    Scalo's stated reason for Rotzoll's discharge, tardiness, is false and merely pretext for discrimination.

184.    The working conditions created by the unlawful sexually hostile work environment at Scalo became so intolerable that a reasonable person would have felt compelled to resign.

185.    The effect of the practices complained of above has been to deprive Rotzoll and other aggrieved individuals of equal employment opportunities and otherwise affect their status as an employee because of their sex, female in violation of Title VII.

186.    The unlawful employment practices by Scalo described above were intentional.

187.    The unlawful employment practices by Scalo complained of herein were done with malice or reckless indifference to the Rotzoll and the other aggrieved individuals' federally protected rights.

188.    As a result of the events and actions described above, Rotzoll and a class of other aggrieved employees lost wages and benefits, were deprived of equal employment opportunities, suffered emotional distress and were otherwise adversely affected because of the sexual harassment and retaliation.

### THIRD CLAIM FOR RELIEF
**Retaliation; 42 U.S.C. § 2000e-3(a)**

189.    The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

190.    Since at least March 2023, Scalo retaliated against Rotzoll and other aggrieved individuals in violation of Title VII, 42 U.S.C. § 2000e-3(a), by taking adverse employment actions against them because they opposed discrimination or otherwise engaged in a protected activity under Title VII.

191.    Rotzoll engaged in protected activity under Title VII when she rejected GM Revilla's sexual advances on many occasions, including on or about February 25, 2023, when she rejected his request for sex in exchange for more hours of work.

192.    Scalo discharged Rotzoll on or about March 19, 2023, about three weeks after her protected activity on February 25, 2023.

193.    Like Rotzoll, other aggrieved individuals engaged in protected activity by opposing unlawful employment practices, or by giving testimony, assisting, and/or participating in an investigation, proceeding or hearing, and subsequently suffered adverse treatment, including but not limited to retaliatory reduction in hours and retaliatory discharge, because they engaged in protected activity.

194.    The effect of the practices complained of above has been to deprive Rotzoll and other aggrieved individuals of equal employment opportunities and otherwise affect their status as an employee because of their engagement in protected activity in violation of Title VII.

195.    The unlawful employment practices by Scalo described above were intentional.

196.    The unlawful employment practices by Scalo complained of herein were done with malice or reckless indifference to Rotzoll and other aggrieved individuals' federally protected rights.

197.    As a result of the events and actions described above, Rotzoll and other aggrieved employees were deprived of equal employment opportunities, lost wages and benefits, suffered emotional distress and were otherwise adversely affected because of their engagement in protected activity.

**FOURTH CLAIM FOR RELIEF**
**Posting violation; 42 U.S.C. § 2000e-10(a), 29 C.F.R. § 1601.30(a)**

198.    Since at least January 1, 2022, Defendant Scalo has willfully failed, in violation of Section 711(a) of Title VII, 42 U.S.C. § 2000e-10(a) and 29 C.F.R. § 1601.30(a) to post notices which have been prepared or approved by the EEOC setting forth excerpts from or summaries of the pertinent provisions of Title VII and information pertinent to the filing of a charge or complaint.

199.    Scalo's willful failure to post notices is punishable by a fine for each violation under Section 711(a) of Title VII, 42 U.S.C. § 2000e-10(b).

**FIFTH CLAIM FOR RELIEF**
**Records Keeping Violation; 42 U.S.C. § 2000e-8(c)**

200.     Since at least January 1, 2022, Defendant Scalo has failed, in violation of Section 709(c) of Title VII, 42 U.S.C. § 2000e-8(c), to make and preserve records relevant to the determination of whether unlawful employment practices have been or are being committed.

201.     Section 709(c) of Title VII and regulations promulgated under that provision, 29 C.F.R. § 1602.14, require employers (1) to preserve documents relevant to an EEOC charge until action on the charge is terminated, and (2) even in the absence of any charge, to preserve for at least one-year designated personnel records such as job applications.

202.     Scalo failed to retain relevant personnel documents such as the job applications, schedules, termination notices, and other personnel records like 7Shifts messages and performance evaluations, relevant to Rotzoll's complaint, as required by 29 C.F.R. § 1602.14.

## PRAYER FOR RELIEF

203.     Wherefore, the EEOC respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Scalo, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in sexual harassment or any other employment practice which discriminates on the basis of sex.

B.     Order Scalo to institute and carry out policies, practices, and programs that provide equal employment opportunities for women, provide sexual harassment training to its managers, supervisors, and non-supervisory employees, and eradicate the effects of its past and present unlawful employment practices.

C.     Order Scalo to institute and carry out policies, practices, and programs that provide equal employment opportunities for individuals who oppose or report discrimination and

harassment, and provide retaliation training to its managers, supervisors, and non-supervisory employees.

      D.     Order Scalo to make whole Rotzoll and other aggrieved individuals by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to lost wages, front pay, reinstatement, benefits, and compensation for all monetary losses.

      E.     Order Scalo to make whole Rotzoll and other aggrieved individuals by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including job search and medical expenses, in amounts to be determined at trial.

      F.     Order Scalo to make whole Rotzoll and other aggrieved individuals by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including inconvenience, emotional pain, suffering, anxiety, stress, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

      G.     Order Scalo to post and keep posted the notices required by Section 711(a) of Title VII, 42 U.S.C. § 2000e-10(a).

      H.     Order Scalo to pay the statutory fine for its willful failure to post notices required by Section 711(a) of Title VII, 42 U.S.C. § 2000e-10(b).

      I.     Order Scalo to make and preserve all records relevant to the determination of whether unlawful employment practices have been or are being committed, in accordance with Section 709(c) of Title VII, 42 U.S.C. § 2000e-8(c).

J.      Order Scalo to pay Rotzoll and a class of female aggrieved individuals punitive damages for its malicious and reckless conduct in amounts to be determined at trial.

K.      Grant such further relief as the Court deems necessary and proper in the public interest.

L.      Award the EEOC its costs of this action.

RESPECTFULLY SUBMITTED this 30th day of June 2025.

## JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by its Complaint.

Andrew Rogers
Acting General Counsel

Christopher Lage
Associate General Counsel

Mary Jo O'Neill
Regional Attorney
Phoenix District Office

Rita Byrnes Kittle
Assistant Regional Attorney
Denver Field Office

/s/ *Lucia Moran*
Lucia Moran
Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Albuquerque Area Office
500 Gold Ave SW, Ste 6401
Albuquerque, NM 87103
Phone: (505)738-6722
lucia.moran@eeoc.gov

**PLEASE NOTE**: For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorneys. Duplicate service is not required on the Acting General Counsel and Deputy General Counsel in Washington, D.C.